No. 8276.

ALLEN, NUGENT & CO. VS. BEN. BUISSON.

BICKHAM & MOORE, INTERVENORS.

A vendor of cotton is entitled to have the sale annulled for non-payment of the price when vendee is in actual or constructive possession.

The fact that the vendee has delivered the cotton to a creditor of his, the proceeds to be applied to the payment of his debt, cannot be set up by such creditor to justify a claim to the ownership of the cotton.

The ownership did not thereby pass. It continued in the vendee, at whose risk the thing remained. The creditor's possession, after such delivery, is that of the vendee.

Such a transaction is not a *dation en paiement.* 'A consent, a price and delivery were necessary, but a weighing was not indispensable.

Where special defenses are not set up, the Court cannot supply them.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus,* J.

*W. S. Benedict* for Plaintiffs and Appellants.

*Miller & Finney* for Intervenors and Appellees.

· The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an action to annul a sale of cotton for non-payment of the price.

The defendant having failed to appear, a default was entered against him.

Parties claiming to own the cotton intervened in the suit.

From a judgment in favor of the third opponents, the plaintiffs have appealed.

The following is a summary or abstract of the facts :

On October 26th, 1880, plaintiffs sold a number of bales of cotton to the defendant, the price of which has never been paid. On November 1st, next, the cotton was delivered by the defendant, under a pressure, to the intervenors, the proceeds to be applied to the payment of an indebtedness of his, to them, arising from another sale of cotton which they had made to him on the 9th of October previous. There is no evidence that the cotton was intended to be given and received in payment of the debt. On the 16th November following, averring the non-

payment of the price of sale by the defendant, possession of the cotton by the intervenors, and alleging the fears usually entertained on such occasions, the plaintiffs caused the cotton to be sequestered in the hands of the third opponents, who bonded the same on an allegation of ownership.

The defendant has not joined issue. The contention is simply between the third opponents, who claim ownership of the cotton, for having acquired it from the defendant, for value received in good faith by a *dation en paiement* and previous to the institution of the suit, and the plaintiffs, who merely ask the resolution of the sale, which they made of the same cotton to the defendant, from whom the opponents claim to have received it, in payment of an indebtedness of his in their favor.

It is apparent that as to the defendant the plaintiffs have made out their case, as far as the fact of the sale to him and the non-payment of the price are concerned; but of what avail would a judgment be to them, annulling that sale, unless the thing sold, the cotton, which had been delivered by the defendant to the third opponents, be returned to them?

This is a sort of cross action between the plaintiffs and the third opponents, in which the former ask a rescission of the sale and the latter revendicate title to the cotton sequestered.

The third opponents were not made and have not become defendants in plaintiffs' suit. They have made themselves claimants in it, and have forced upon the plaintiffs the attitude of defendants on their third opposition. Upon them rests the burden of proving their averment of title to the cotton by transfer and possession. Should they fail in this, then plaintiffs would be entitled to recover possession of the cotton which the opponents claim to hold *animo domini*.

There can be no doubt as a rule, *positis ponendis*, that one to whom cotton has been sold and delivered and who is in actual possession, apparently as owner, may lawfully sell it or transfer it in payment of his debt, free from all claim, after five days have elapsed from the delivery to him, and that the sale or giving in payment for non-payment of the price cannot be annulled where the cotton has been turned over to the purchaser or creditor, and title of ownership has thereby been divested.

Hence, the theory upon which the opponents revendicate the cotton is, that the ownership of it had passed from the defendant and has vested in them. This is an assumption which is verified neither by the facts nor by the law.

In order to show title, the opponents aver that the cotton was given to them in payment of their claim, but they have introduced no

evidence that such ever was the intention of the parties on the subject. It is true that the opponents were the creditors of the defendant and that the cotton was delivered to them by his order; but the circumstances under which the transaction took place do not establish an intention, a consent, in the parties to give and receive the cotton in payment of the debt. The evidence does not show that the cotton was transferred for any specified price, agreed upon and fixed for the giving in payment, which is assimilated to a sale.

The proof shows that the defendant was a man of no means, not blindly trusted by those who dealt with him, and that he was under a strong pressure from the opponents when he authorized the delivery of the cotton to them. The record shows, besides, that the cotton after being thus delivered to the opponents was by them sold during the pendency of the suit, not for their own account as owners of it, but for the *account of the defendant*, their debtor, and that in furtherance of the previous agreement between them, the proceeds were applied to the satisfaction of his indebtedness, reduced by a partial payment.

The very letter which they wrote on the 10th of November, 1880, to the plaintiffs, in answer to theirs of the day before, in unmistakable language admits that they received the cotton from the defendant, proceeds of which were to be applied to the payment of his indebtedness to them. The letter concludes by saying that until the indebtedness is satisfied they decline to comply with plaintiffs' demand for the cotton.

The bills of sale of the cotton show that it was sold for defendant's account, and the statement of his account with the intervenors proves that the proceeds were carried to his credit, *leaving a small balance against him.*

If, as claimed by the opponents, the cotton had, under a contract, been given and received in payment of defendant's indebtedness to them, that debt, on the delivery of the cotton, would have been extinguished, the intervenors would simultaneously have become the owners of the cotton, and no further claim could have been asserted against the defendant growing from that indebtedness.

The letter, the bills, the statement of account, the balance to the *debit* of defendant, show conclusively that the opponents never considered themselves as the owners of the cotton.

It is clear that had the cotton, after its delivery by the defendant to the opponents, been destroyed by fire, or otherwise perished, defendant could not have claimed credit for its value. The loss would have had to be borne by the defendant, whose property it continued to be and at whose risk it remained, notwithstanding the delivery. R. C. C.

2439, 2458, 2655; 19 An. 489; 10 An. 242, 249; 17 An. 146; 20 An. 111; 19 An. 123, 489; 24 An. 150; 24 An. 85; 27 An. 534; 30 An. 894.

If it be true that plaintiffs by their incautiousness have invested the defendant with the *indicia* of ownership, and thus enabled him to hurt them, and perhaps to affect third innocent persons, it cannot be pretended that it has been shown that he has done any act from which it can be legally inferred that he has ever parted with that ownership to the injury of either the plaintiffs or the intervenors. Had he actually by such act divested himself of that ownership, either by a valid giving in payment or sale, or any other act of alienation and self-expropriation, or had he affected the solidity or value of such ownership by a pledge of the cotton, the asserted rights of the plaintiffs to a recovery would not have been so very clear.

The intervenors have boldly averred a title of ownership and have revendicated the cotton as their property. They did not allege a contract of pledge or assert any other right except ownership. They had to elect and they have done so. Silbernagel's case, 23 An. 699.

By the delivery of the cotton to them, with the understanding that the proceeds should be applied to the extinguishment of defendant's debt, the intervenors did not acquire the ownership of the cotton, which continued to be in defendant. He had merely turned it over to them, with the power of selling it, with the obligation on their part to use the proceeds to satisfy his indebtedness. After such delivery, had he tendered the amount of his debt to the intervenors, they would unhesitatingly have returned the cotton to him.

In the analagous case of Burkett, 19 An. 489, this Court in substance said:

"Chandler, the intervenor, claims the bales of cotton as owner. We are satisfied, by his own answers to the interrogatories, that they belonged to the defendant Hopson, who had sent them to the intervenor to be sold on his account, the proceeds to be applied to his credit. There was no price agreed on and the cotton was not weighed. If the cotton had been destroyed by fire, how could Hopson have claimed credit for the value. It was not a *dation en paiement* for any specific sum. The credit to be given depended upon the sale yet to be made."

While referring to this case, we are not to be understood as saying that cotton cannot be given in payment of a debt without having passed the scales. Unweighed cotton can be thus given upon delivery, provided the amount of the debt which it is intended to extinguish be specified, as a price must be stated, as in case of a sale.

The fallacy underlying the judgment appealed from consists in the

assumption of the fact that the defendant had actually transferred the ownership of the cotton to the intervenors, which was not the case.

The possession of the cotton at the time of sequestration was defendant's possession. The seizure of it in the hands of the intervenors was a seizure in the hands of agents, holding for their principal, which is, in every respect, equivalent to a seizure in the latter's hands directly.

We have not to deal with the case as it might have been presented. As it is submitted by the pleadings and by the evidence, so must it be decided, particularly when thereby the ends of justice are fully attained.

As there was no special defense interposed, we have no authority to supply or recognize any. ·

Owing to the importance of the question at issue, from a commercial standpoint, we have taken pains to review most of the law and jurisprudence, local and French, bearing on the same, and we remain confirmed in the correctness of our conclusions. R. C. C. 2045, 2046, 2138, 2139, 2561, 2439, 2458, 3227, 1970, 1978, 1983, 2655, et seq. ; 1 An. 80 ; 10 An. 242, 249; 11 An. 91; 12 An. 521, 700; 17 An. 146; 19 An. 123, 489 ; 20 An. 111 ; 23 An. 699 ; 24 An. 85, 150; 27 An. 534; 28 An. 942; 30 An. 894, 1246; N. C. 2102, 1654; Gilbert, p. 787, and notes; Marcadé 6, 288 ; Merlin R. J., Vo. Revendication, p. 36; Pont. 1, p. 103, 121 ; Duranton XIX, No. 120; Troplong, No. 199; Mourlon 3, p. 520, Nos. 1300, 1305, etc.

There was error in the finding of the lower court.

It is, therefore, ordered and decreed, that the judgment appealed from be reversed. It is now ordered, adjudged and decreed, that there be judgment in favor of plaintiffs against the defendant and the third opponents, annulling the sale of cotton made by the plaintiffs to the defendant, rejecting the third opposition of the intervenors and entitling the plaintiffs to possession of the cotton sequestered or the proceeds thereof, reserving their action on the forthcoming bond for recovery of either the cotton or the proceeds, appellees to pay costs in both Courts.

## ON APPLICATION FOR REHEARING.

The intervenors insist that they are entitled to a rehearing, for the reasons that there is an admission of record that the cotton was given them in payment and that the suit was brought too late.

The admission is that the cotton was given in payment, *proceeds to be applied to Buisson's debt.* It is self-destructive.

The intervenors have claimed ownership and set up no other right. Their letter and their acts, in selling the cotton *for account* of Buisson

and applying the proceeds *to his credit,* leaving a *balance against* him, destroy their pretension to the ownership and show that they never considered themselves as owners of the cotton.

Special defenses, such as the expiration of time debarring a plaintiff's action, should be distinctly stated. The intervenors have not set up any such either in the court below or here, and have not even made the point in argument. This cannot be done in an application for a rehearing. C. P. 895; 6 L. 193; 1 R. 221, 330; 5 R. 467; 13 An. 394; 14 An. 67; 19 L. 48.

Rehearing refused.