The opinion of the court was delivered by
McEnery, J.
The plaintiffs, who are wholesale dealers in miscel - laneous articles of merchandise, conducted their business at No. 52 Canal, 71 Common street and 12 Magazine. These several places were connected and open, affording a continuous floor space.
The plaintiffs are, as the record shows, enterprising merchants, whose business increased with almost unprecedented rapidity. They needed more room and better accommodations to meet the increase of their business. They, therefore, entered into a contract with the defendant corporation on the 12th of March, 1892, to build for them at Nos. 10 and 12 Magazine street a four-story building, which was to be finished and ready for the occupancy of plaintiffs’ business on the first of October, 1892, and to rent the same to plaintiff, who were to pay them seven thousand two hundred dollars for the first year, and eight thousand dollars for the fifth and last year of the lease; the rent increasing two hundred dollars each year. The building was not completed at the time agreed upon, and the plaintiffs occupied it only in January. No. 12 Magazine was the property of the defendant corporation. Plaintiff vacated it for the purpose of its being torn down, preparatory to the building of the structure agreed upon between the parties. The plaintiffs still continued to *1234 occupy 52 Canal and 71 Common, and they also obtained from the defendant corporation, free of rent, the use and occupancy of part of No. 23 Magazine, using about three-fourths of the building.
In anticipation of occupying the building, and a large increase of sales, the plaintiffs ordered more goods than they had usually purchased when occupying their former places of business. For imported goods the orders were placed as early as March, and for domestic goods, in June and July, the delivery of the goods being so arranged as to arrive about the time plaintiffs did their largest and most profitable business, in the fall of the year.
Foreign and domestic orders, to certain extents, were countermanded when plaintiffs ascertained that they could not get possession of the new building on the 1st October.
By reason of the failure of the defendant corporation to deliver to the plaintiffs the new building, they brought this suit for damages against the defendant corporation for the sum of thirteen thousand nine hundred and seventy-nine dollars and eighty-eight cents, the items composing this amount being for gas bills, extra labor, meals, etc., extra night work by the plaintiffs, A. J. and W. H. Dwyer, and loss of profits.
The plaintiffs were met, at the inception of the suit, by an exception that the suit was one for a passive violation of a contract, and that as a condition precedent, and a prerequisite to the institution of such suit, there must have been a legal putting in default by a special demand for compliance, which the acceptors averred had not been done.
The exception was overruled. Reserving the same, defendants answered with a general denial, and specially averred that they were prevented by causes over which they had no control from completing the building by the specified time; that to prevent injury to plaintiffs by the unavoidable delay in delivering the new buildings to them, the defendants authorized the plaintiffs to renew the lease they had held on 52 Oanal and 71 Oommon streets, for the months they occupied said buildings, and assumed the entire lease after January 1, 1895, and paid to plaintiffs the excess of the lease over that which they had been paying for said premises, and that they gave them 23 Magazine street free from rent, and in thus accommodating them they were provided with better facilities than they ever had for handling and displaying goods, and that, there *1235 fore, they suffered no injury by the delay in the delivery of the building. And they also specially deny any legal obligation to pay for anticipated profits from the 1st October, 1892, to 1st January, 1893.
There was judgment for the plaintiffs in the sum of five thousand five hundred and forty-three dollars and thirty cents, with legal interest from December 12, 1893.
The defendant corporation appealed.
Defendants’ answer and the testimony in the record shows that they acknowledged their inability to complete the building by the 1st October, 1892. A putting in default under such circumstances would be a vain, an idle and a useless ceremony. Non-performance by the defendants of their contract justifies the suit against them. Allen, West & Bush vs. Steers, 39 An. 587.
There was no fortuitous or irresistible force which prevented the defendants from completing the building; they are, therefore, liable for damages for the inexecution of the contract. O. O. 1933. The testimony shows, however, that the defendants acted in good faith, and not for self-interest, and were guilty of no fraud. They are, therefore, liable only for such damages as were contemplated or may be reasonably supposed to have entered into the contemplation of the parties at the time of the contract. O. O. 1934, Sec. 1.
The general rule is that damages are. the amount of the loss the creditor has sustained, or of the gain of which he has been deprived. Id., Sec. 2.
The loss which the creditor has suffered, and the gain of which he has been deprived, must be the natural and proximate cause of the wrong. 2 Greenleaf, par. 256; Sedgwick Damages, 362. It has been otherwise expressed as the direct, necessary, or legal and natural consequence. It must not be remote or consequential, but the natural consequence. Every man is expected to foresee the usual and natural consequences of his acts, and for them he is to be held responsible and accountable, but not for consequences that could not be foreseen. Pothier Obligations, Damages; Doriocourt vs. Lacroix, 29 An. 287; Massie vs. Baily, 33 An. 485; Vidalat vs. New Orleans, 43 An. 1121; 17 Pic. 78; 3 Texas, 324; 13 Ala. N. S. 490; 28 Me. 361; 2 Wis. 427; 1 Sneed, 518; 4 Blackf. 277; United States vs. Behan, 110 U. S., 338.
The damage must be the proximate consequence. Vague and in *1236 definite results, remote and consequential, and thus uncertain, are not embraced in the compensation given by damages. It can not be ■certainly known that they are attributable to the wrong, or whether they are not connected with other causes. Id.; 4 Jones N. C. 163.
In Schleider vs. Dielman, 44 An. 471, referring to Art. 1934, C. C.’ this court said: “In this connection, the question to be determined is, whether the unearned profits of a transaction properly enter into a calculation of the loss which the creditor has sustained, and the profit of which he has been deprived, in the sense of that article.
The decisions based on that article have invariably placed a strict interpretation on its provisions, the court generally awarding only such damages as will fully indemnify the creditor, and disallowing speculative profits, confining them to the immediate and direct consequences of the breach of contract.
In the case under consideration, the contract had no reference to any article of merchandise which was to be delivered on a certain day, nor had it any relation to the character or the amount of business, the number of employees, or the hours of labor to be performed by theni. All these matters were not incidents of the contracts, and necessarily, for a breach of it, could not have been within the contemplation of the parties. It was not one of those contracts alluded to in the United States vs. Behan, 110 U. S. 338, where the damages would be the profits realized by performing the whole contract. The only damage the plaintiffs would be entitled to here is the amount they necessarily expended by reason of the failure of defendant to deliver the building to them on the 1st of October, 1892.
The claim for damage is generally based on the assertion that if the plaintiffs had occupied the building at the time agreed upon they would not have suffered any loss; that is, they would have had no gas bill to pay, no extra labor to employ, no extra meals to serve, and that they would have had in stock merchandise to fill orders which they were compelled to decline for want of the necessary material on hand. All these items of damage are so uncertain, resting upon so many contingencies attending a large commercial business, that they can not be solely attributed to the violation of the contract, and may in part, at least, find their source in other causes. There is too much of an element of uncertainty about them. Eor instance, the plaintiffs used gas before they made the *1237 contract, and the amount depended upon the rush of business and the necessity of night work, and the condition of the weather. That they used less gas in the new building they now occupy is certain. In the future, if plaintiffs’ business meets with the phenominal increase-which has attended it, the gas bills may largely exceed those they paid in October to January 1, 1892, in their former place of business. We are not informed as to the amount of difference. And the same may be said of extra labor. They employed it before the contract was entered into. The necessities of their business demanded it, and also the service of extra meals to their employees. It is certain that the defendants are not responsible for the gratuity, the Christmas-present of nine hundred dollars to plaintiffs’ employees. Nor are they responsible for the individual labor of the employees in their business, although performed at night, and, as they say, would have been unnecessary in the new building. The motor placed in the elevator of the buildings formerly occupied by plaintiffs can form no item for damage, as it’was, we think, a matter of personal convenience to themselves, and to facilitate access to upper floors.
The loss of profits is narrowed down to the gain which would have been made by plaintiffs in the sale of twenty-three thousand eight hundred and one dollars and fifteen cents of goods which they did not have in stock, the profit on which, had they been sold, would have been three thousand, one hundred and sixty-three dollars and sixty-five cents. These goods had been ordered, and countermanded when it became evident that the new building would not be ready on 1st October. It is admitted orders to the above amount were received, and not filled because the goods were not on hand. This was a matter for the business discretion of plaintiffs, resting in their discretion and judgment. Had they seen fit to do so, they could have continued the order and stored the goods at the expense of defendants. It is sufficient to say that they did not sell the goods, for the reason they did not have them in stock. All the items of damage above referred to were not, and could not have been, in the contemplation of the parties when the contract was entered into, and they are not the immediate and proximate consequence of the violation of the contract.
We find only one item to which the plaintiffs are entitled to damage. It was evident in the contemplation of the plaintiffs to have more room for the transaction of their business, and this the defend *1238 ants agreed to furnish. Goods were ordered in anticipation of the additional room the plaintiffs expected to have at their disposal. When they reached here they did not have the room to accommo - date them and rented a warehouse in which to store them, for which they paid seventy-four dollars and fifty cents.
It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided so as to reduce the judgment against defendants to seventy-four dollars and thirty cents, the appellees to pay costs of appeal.