### No. 12,050.

### MARY ELLA MCPHERSON VS. EDGAR BOUDREAU.

Where a person, a few days after the execution of a note, payable on demand to the maker's order and endorsed by him in blank, has had the same transferred to him in good faith for a valuable consideration, in due course of trade and without notice, as collateral security for a note due to him by a third person, to whom the maker had delivered it, the equities existing between the original holder and the maker are cut off, so far as they affect the second holder, and they are not thrown open because, at a later date, the party holding the note as collateral accepts it in absolute ownership and credits its amount upon the main or principal note.

Where it is shown that a person, claiming to have held a negotiable note, endorsed in blank as collateral for a note due to her by her brother-in-law, placed it in the hands of her sister, the wife of her debtor, for safe keeping, but subsequently regained possession of it, accepted it in full ownership and credited the amount of the same upon the main or principal note, the fact, whatever weight it might have as throwing a suspicion upon the reality of the original situation of the parties, does not, if their reality has been established, work a forfeiture of the rights of the pledgee and open the equities.

Where plaintiff brings suit, as the holder and owner of a promissory note, against the maker, and is met by equities set up by defendant as existing between

himself and the original holder, coupled with averments charging the plaintiff with knowledge of the same and denying his good faith, he is entitled to repel the attack and show the date of his original connection with the note and the tenure under which he first held it.

APPEAL from the Eleventh Judicial District Court for the Parish of St. Landry.  *Perrault, J.*

*C. F. Garland* for Plaintiff, Appellee.

*Estilette & Dupré* for Defendant, Appellant.

Argued and submitted February 11, 1896.
Opinion handed down February 24, 1896.

### STATEMENT.

Plaintiff, as the holder and owner of a certain promissory note, dated July 10, 1890, for the sum of three thousand dollars, bearing eight per cent. per annum interest from date until paid, and made payable on demand, asks judgment against the maker (the defendant), subject to a credit of seven hundred and fifty-nine and 15-100 dollars, partial payment of interest on the note.

Defendant answered that in February, 1887, he formed a commercial partnership with Martial Casse and carried on the business in his (own) name in the town of Sunset, in the parish of St. Landry; that about July 10, 1890, Casse informed him that it was necessary that he should dispose in some way of his interest in the partnership, and insisted that respondent should buy him out and he consented to do so; that Casse caused him to sign the note as the price of the transfer; that a short time after, respondent having reflected upon the transaction told Casse he had exacted too much of him; that the note exceeded by far the value of his interest; that thereupon Casse stated, " Very well, let us say the transfer is null and void, and I will destroy the note and we will continue the business as heretofore," to all of which respondent consented; that the annulment of the contract was imparted by Casse to one Louis A. Bonne, of New Orleans, a partner of Casse in business; that re-

McPherson vs. Boudreau.

spondent was induced to believe in the destruction of this note by Casse, according to his promise, and never expected for a moment that it had not been destroyed; that his wonder was great when plaintiff, a sister-in-law of Casse, claimed within the last two months (in 1895) ownership thereof; that he immediately visited Casse, who stated that he thought he had destroyed the note; that his wife had found it among his papers to his great surprise, and in a crazy fit he had yielded to his wife's intercession and permitted. her to turn the note over to her sister—the present plaintiff; that all of the above facts were within the knowledge of plaintiff, who acquired the note after maturity, and after it was open to all questions of equity; he therefore pleaded the extinguishment and annulment of the note and the debt which it evidenced in the manner stated.

The court rendered judgment in favor of plaintiff for the amount prayed for and defendant appealed.

———

The opinion of the court was delivered by

NICHOLLS, C. J. Defendant claims that the note sued upon represented the purchase price of the interest of one Martial Casse in a partnership between Casse and himself; that that sale was very shortly after it was made rescinded, and the note declared by Casse to have been destroyed. That he was under the belief that this was so until it was presented to him for payment nearly five years after its maturity by the sister-in-law of Casse as the holder. He contends that plaintiff did not acquire the note until March, 1895. That although the note was payable on demand, and no demand had been made until after she became the owner, her acquisition at that late date threw open for inquiry the equities between Casse and himself. Plaintiff testified that although she acquired the note in full ownership in March, 1895, she had held it as collateral security from some time in July, 1890, for a note given by Casse to herself at that time for money loaned to him, which note was renewed in 1894, and the collateral note still held until 1895. Defendant calls our attention to the fact that plaintiff shows by her own testimony that after Casse had given her the note as collateral, in 1890, she placed it, as she says, in the custody of her sister, the wife of Casse, for safe keeping, in whose possession it continued until just before it was transferred in full ownership, in March, 1895. He says that if the pledge was

originally good, it fell by the placing of the note in Mrs. Casse's possession, and plaintiff's rights must be determined by considering her connection with the note as having originated in 1895. He denies as a fact that the note was held as collateral by the plaintiff between 1890 and 1895, and as evidence that he is correct in that position he shows that in that interval the collateral note was credited with seven hundred and fifty-nine dollars as having been paid thereon, by an amount due by Casse to Boudreau, during that period —a partial payment, he says, which would not have been recognized by plaintiff had she really held the note as collateral at that time. The case before us bears a close resemblance to that of Louisiana State Bank vs. Gaiennie, 21 An. 555. In that case the bank had had transferred to it, on the 13th of April, 1861, as collateral security, for a note of Toledano & Taylor, a note of defendant, dated 20th of April, 1860, payable three years after date, to the maker's own order, and by him endorsed. Toledano & Taylor went into insolvency, and the syndic, under orders of court, sold on the 8th of June, 1867, the note, among others, subject to the right of the pledgees, and the bank itself became the purchaser. The bank, however, had never given up the note, but had already instituted suit against the maker. Among other defences defendant contended that the note had been advertised and sold with the knowledge and consent of the plaintiff; that the title and ownership of the same had been retransferred to Toledano & Taylor, and the note being only accommodation paper, had become subject to the equities between the latter and defendant. Defendant also contended that as the collateral note had not been endorsed by Toledano & Taylor, the pledge to the bank was not valid.

In reference to this last contention, this court said: "When, as in this case, the note drawn to the order of the maker is endorsed by him in blank and before maturity transferred for value to the plaintiff, the maker can not be heard upon a question which concerns only other creditors of the pledgor." Citing Matthews vs. Rutherford, 7 An. 227.

Referring to the fact that the note had been originally held as collateral security, the court said: "It is further urged that the plaintiffs are not holders for value, because they received the note as collateral security only, but the contrary doctrine is well settled (Swift vs. Tyson, 16 Peters 20; Succession of Dolhonde, 21 An. 3).

And in such a case as this, where there is no evidence that the principal obligation has been discharged, even in part, the rights of the plaintiff are, for all practical purposes, the same as they would have been if plaintiffs had purchased the note before maturity."

In the case at bar, if, in point of fact, the plaintiff held the note as collateral security from July, 1890, until her holding was changed into one of absolute ownership in March, 1895, and during that period inquiry into the equities upon the note was cut off by reason of her having had the same transferred to her just after its issue, for a valuable consideration in due course of trade, and without notice, we do not think the mere change of the tenure by which she held the note, from holding it as security into holding it as owner, would open the equities as if her first dealings in connection with the note had commenced in 1895.    Had the first connection with it begun with its acquisition as owner in 1895, possibly defendant's contention that its staleness at that time was a matter sufficient to have placed her on inquiry as to the equities, even though it was a demand note, might be correct.   Thompson vs. Hall, 6 Pick. 260 (referred to in Matthews vs. Rutherford, 7 An. 226), seems to have been a case where a demand note was taken as collateral " six months after it was due, and under circumstances which might reasonably excite suspicion that it was affected by equities."   What the facts of that case were, however, we do not know, but in the present one the relations of parties originated within a few days after the collateral note was issued, and the protection against equities, which was the result of the first transaction, was not, as we have said, forfeited by the fact that by and through a later transaction she became the actual owner of the note.   The fact that plaintiff turned over this note immediately after having herself received it, to her sister, the wife of Casse (for safe keeping, as she says), and that she permitted it to remain so long in her hands, might be a circumstance going to throw doubt as to whether the note ever was held as collateral, but that fact itself being established, we do not think the pledgee's rights were injuriously affected by her placing it in her sister's hands.    There were no creditor's rights involved.

In so far as the circumstances themselves under which plaintiff first took the note are concerned, the presumption resting from her holding the same would be that she acquired it in good faith before

maturity for valuable consideration and in due course of trade. Plaintiff supports this presumption by her testimony. She under oath declares that having in July, 1890, over four thousand dollars of her own, her brother-in-law, Casse, asked her to lend it to him, which she agreed to do if he gave her security; that he told her he had this note of Boudreau and gave it to her as collateral security; that she knew nothing then nor afterward of any legal reason why it should not be paid; that Casse told her Boudreau owed him that amount, and she took the note in absolute good faith. Her testimony is direct, absolute and positive, and has not been contradicted. Defendant did not place Casse on the stand, though he was present at the trial.

There is but one single feature of the original transaction calculated to throw any suspicion about it, and that is a statement volunteered by plaintiff herself, in her testimony, that Casse told her when he gave her the note that he would never collect it himself. Plaintiff evidently attached no particular significance to the statement at that time or afterward. We do not think the circumstance sufficient to withdraw from the plaintiff the protection of the rule of the commercial law relative to the cutting off of the equities.

Defendant objected to evidence going to show that plaintiff ever held the note as collateral, on the ground that it was not admissible under the pleadings, as she said nothing in her petition on that subject, but claimed to hold the note as owner. She did hold the note as owner at the time of the institution of the suit and therefore her pleadings were unobjectionable. When her good faith was attacked and the equities were sought to be opened she had the right to resist or repel the effort to do so by showing the facts connected with her holding the note prior to her acquiring the absolute ownership of the same.

Defendant has not established with any certainty the time at which the purchase by him of Casse's interest in the partnership was set aside; it was certainly not until after the note had been placed by him in Casse's possession, in a form such as would enable him to deal with it as strictly negotiable paper with third parties. It is not shown as a fact (even if that fact would have had any legal effect in the case) that this rescission took place prior to the transfer of the note to plaintiff as collateral. If defendant should suffer loss in this matter, it will be the result of his having so implicitly trusted

his partner Casse.    The fact that he  may suffer loss is a matter over which we have no control.

We think the judgment correct, and it is hereby affirmed.