LAND, J. A reconsideration of the evidence has not convinced us that this court erred in decreeing the sale in question to be a simulation, and in condemning the defendant J. C. Eason to account in the partition for the sum of $425. We, however, think that, as the evidence tends to show that J. C. Eason has made valuable improvements on the common property, he should be given an opportunity to plead and prove his claim therefor against his coheirs.

It is therefore ordered that our decree heretofore handed down be amended by remanding the cause for a general accounting and settlement between the parties, and it is further ordered that as thus amended, the said decree be reinstated and made the final judgment of this court.

---

(58 South. 16.)

No. 18,822.

NEW IBERIA SUGAR CO., Limited, v. LA-GARDE.

(Feb. 26, 1912. Rehearing Denied March 25, 1912.)

*(Syllabus by the Court.)*

1. EVIDENCE (§ 158*)—BEST AND SECONDARY EVIDENCE—MINUTES OF CORPORATION.

While it is true that the best evidence must always be produced, and that where the minutes of a corporation show who is the secretary that they are the best evidence, still parol evidence is admissible to show who is the de facto secretary of the corporation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 472, 473, 474½–504, 506–526; Dec. Dig. § 158;* Corporations, Cent. Dig. § 1736.]

2. EVIDENCE (§ 174*)—BEST AND SECONDARY EVIDENCE—MINUTES OF CORPORATION.

The best evidence rule does not require that the minutes of the meeting of a corporation should be produced, but requires only that a properly certified copy of the minutes should be produced.

[Ed. Note.—For other cases, see Evidence, Cent.Dig. §§ 561–564, 566–569; Dec.Dig. § 174.*]

3. LIENS (§ 15*) — CONSTRUCTION OF CONTRACT.

The owner of land who contracts to deliver its yield to another does not thereby burden the land with a real servitude in favor of the obligee, but merely binds himself personally for the fulfillment of his contract, and, where he sells the land, it passes to the vendee free from any right in favor of the obligee.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 20; Dec. Dig. § 15.*]

4. SALES (§ 406*)—REMEDIES OF PURCHASER—ACTION FOR BREACH OF CONTRACT—CONDITIONS PRECEDENT.

As defendant has bound himself to sell plaintiff the yield from his land during five years, his sale of the land before the expiration of that time was an active violation of his contract, and it was not necessary for plaintiff to place him in default. By his sale of the land, he had created a condition which made it impossible for him to fulfill his contract by delivering its yield, and to have put him in default would have been a vain formality.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1156–1158; Dec. Dig. § 406.*]

5. SALES (§ 1*) — VALIDITY — POTESTATIVE CONDITION.

The provision in the contract that if the refinery should be disabled, or destroyed by accident, that during such time plaintiff could sell his cane to others, but must deliver it to plaintiff as soon as plaintiff's refinery was again in working order, was not a potestative condition that vitiated the contract, as the creation of the condition which would suspend the contract was not dependent upon the exercise of the will of one of the parties, but was dependent on vis major, or some cause beyond the control of the parties. The purpose of this provision of the contract is to prevent hardship to the parties, and not to put it in the power of either to terminate the contract at will.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1, 3–5; Dec. Dig. § 1.*]

6. SALES (§ 418*)—REMEDIES OF BUYER—ACTION FOR BREACH OF CONTRACT—DAMAGES.

Plaintiff is entitled to damages based on the amount of loss it has sustained and the profit of which it has been deprived.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

7. DAMAGES (§ 62*)—COMPENSATORY DAMAGES—DUTY TO MINIMIZE.

As plaintiff failed to show that it minimized its damages for the year 1909, it will not be permitted to recover for a violation of the contract during that year.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–131; Dec. Dig. § 62.*]

Monroe, J., dissenting.

Appeal from the Twentieth Judicial District Court, Parish of Lafourche; Whitmell P. Martin, Judge.

Action by the New Iberia Sugar Company, Limited, against J. H. Lagarde. From a judgment for plaintiff, defendant appeals. Affirmed.

Howell & Caillouet and Andrew Thorpe, for appellant. L. T. Dulany, for appellee.

BREAUX, C. J. Plaintiff sued to recover damages in the sum of $26,000 caused by an alleged breach of contract by defendant.

The Iberia Sugar Company owns a refinery and buys cane from cane growers.

The defendant was a cane grower.

On the 16th day of May, 1908, plaintiff and defendant entered into a contract in which plaintiff bound itself to buy cane of defendant for a period of five years, beginning with the year 1908, and ending with the year 1912; and defendant bound himself to sell to plaintiff "all the cane grown on the Interlaken Plantation" (the name of defendant's place), for which he was to be paid for cane delivered at the factory 80 cents per ton for each cent per pound on prime yellow sugar, to be determined on sales as a basis made on the New Orleans market of the week preceding the date that the sugar would be rated as to its value at the refinery.

In a letter of even date with the act, plaintiff's authorized agent bound the company to pay 20 cents additional per pound, making $1 instead of 80 cents per ton for each cent per pound.

It was agreed that the cane was to be well matured, sound, unfrozen, free from leaves and trash, and properly cut at top and bottom; to be cut at the top at no place above the red joint. The contract contains many specifications.

The quantity of cane was limited to 4,000 tons, the product of about 125 acres of cane and 135 acres of stubbles, and the entire product harvested for sugar making on the Interlaken Plantation during every season named in the contract to be delivered to plaintiff.

In June following, there was a rumor that, despite the contract, defendant was negotiating with the owner of another refinery to sell Interlaken Plantation. The vice president of the plaintiff company met defendant, Lagarde, and said to him, in substance, that he should not sell his place, and, if if he did sell, he would hold him liable for breach of contract.

As part of the cause, we will state that, defendant seeking to escape from liability, later pleaded that the contract was null because it contained a potestative condition. As relates to this plea of nullity, we will state that there was a provision in the contract regarding the possibility of a breakdown of plaintiff's machinery in sugar making time. The defendant reserved the right to dispose of his cane during the suspension, but, immediately after the resuming of work, he (defendant) was to return to the conditions and terms of the contract and continue in delivering cane to plaintiff. The contract provided in the event of an accident, such as fire or breakdown, disabling the factory for the season, it was to become null to the extent of the season's operations, but this was not to release defendant from his obligations for the remaining years of the contract if the plaintiff rebuilt its factory; but, if plaintiff did not rebuild, the whole contract would be at an end and null.

This notice did not have the desired effect, for on the 5th of June, 1908, the defendant sold and delivered the place without making any reservation in the sale in regard to his contract with plaintiff. The sale in question is absolutely silent upon the subject.

There is evidence to prove that subse-

quently the defendant was aware that plaintiff's refinery was prepared to receive the cane. He did not undertake to deliver it, for he had, as before stated, sold his place, and it was not possible for him to deliver the cane in accordance with his obligation.

Plaintiff brought this suit in the name of the New Iberia Sugar Company, represented by the president, R. B. Hannley, acting by the authority of a special resolution, and plaintiff claimed the amount first above mentioned for breach of the contract. It alleged with some particularity the facts upon which it based the right it claimed, and alleged substantially that the breach was active and not passive, and that the defendant had been placed in default.

There were issues raised in the district court to which we attach no importance, including such as prayer for oyer, motion to rescind, order granted, and as to similar steps taken.

This brings us to the exception taken by defendant on the ground that plaintiff had not been authorized, that the demand was premature, the petition vague, no right, and no cause of action.

Testimony was taken when this exception was heard, and it was shown that Mr. Hudson is the secretary of the New Iberia Sugar Company, and a resolution passed at one of the meetings of the board of directors was introduced in evidence.

The heading of the resolution shows that it was adopted at a special meeting of the board of directors, and the secretary certifies that it is a true and correct copy of the resolution passed at a meeting held on the 10th of April, 1910, "as taken from the minutes of said meeting."

Plaintiff's petition is that "the New Iberia Sugar Company, a corporation organized under the laws of the state of Louisiana, and herein represented by its president, is entitled to the amount above mentioned as damages." Later we will give consideration to the objection that the corporation is not properly before the court.

Another plea was that two of the directors were not owners of stock, and that in consequence there was no quorum, and that the secretary, who was one of the directors who owned no stock, was not a director. That it was not proven by producing the minutes that he had been elected secretary; that the minutes should have been produced as they contained a full narrative of the acts of the corporation.

Of this also later.

The district court overruled the exception save in certain particulars, and, in the second place, it did not sustain defendant's position which, had it been sustained, would have necessitated the production of the minutes of plaintiff's corporation.

We will state that the ruling of the district court was correct as to defendant's plea of vagueness and other similar pleas. This disposes of all that part of the exception relating to said pleas. There remains to be decided only the issue of whether the president was authorized to institute suit, or whether the corporation was a party to the suit, without further authorization, and whether the defendant was in default, or whether default was necessary, also the plea of no cause of action, also the defense growing out of the asserted failure to produce the minutes, and the attack made on the right of the officers to serve in their respective capacities because, as alleged, they owned no stock, and the asserted potestative condition urged by defendant present other issues which will be decided.

The court pronounced judgment against defendant for the sum of $4,011.30 with legal interest from judicial demand.

[1] As relates to the objection that plaintiff should have produced its minutes, we are brought to a consideration of the cardinal

rule requiring that the best evidence should be produced in proving a cause of action. That, as plaintiff kept written evidence of its proceedings, the best evidence is the written minutes and not the mere declaration on the witness stand of what took place at the meeting of the board of directors.

[2] Be that as it may, a resolution was adopted at a regular meeting which forms part of the minutes certified to by the secretary. It authorized the president to institute suit. There is no necessity of producing the originals. Copy will suffice, unless there is special reason for producing originals; no such necessity appears here.

Moreover, the corporation itself is a party, and, if we eliminate the clause showing the authority given to the president to bring suit, the corporation would remain a party.

Now as to the secretary and the directors and the attack made on their terms of office: To an extent, copies of the minutes and verbal testimony are admissible to prove that the secretary was an officer de facto. It must be remembered that the issues regarding the right of the officers to act because "without interest" were never presented by the pleadings; and again it is a collateral attack with the view of preventing the corporation from exercising the functions of a corporation.

While the authorities referred to hereafter are not direct, they have, none the less, some bearing.

Thompson lays down the generally accepted rule (volume 1, p. 268, § 248).

The law encourages and shares in the universal desire for the stability of business transactions, and very wisely provides that, when a corporation has attained an existence de facto, the regularity of its corporation shall not be questioned by indirect attacks by parties who are not concerned in the strictness of its incorporation, and, quoting a part of the rule laid down by the Alabama court, he says:

"If the state acquiesce in the usurpation of corporate powers, individuals cannot complain."

This rule finds authority in Cyc. vol. 10, p. 256, wherein it is said that the rightfulness of the existence of a body claiming to act, in fact acting, in the face of the state as a corporation, cannot be litigated in an action between private individuals and the assumed corporation, * * * the rightful existence of a corporation cannot be raised in a collateral proceeding.

Having disposed of the questions we deemed proper to decide at this time, it becomes necessary to insert a summary of the facts for the purpose of the decision on the merits.

It was shown that every department was under the supervision of an officer. Each in charge testified. These witnesses gave the number of tons of cane ground and the net price. They accounted for the weight and relate the manner of weighing by the weighers of the cane, the return made by them, how these returns were checked up. The items were entered into the books from which they were journalized and posted into the ledger. The total cane entered was taken from the cane book in the office. The cane weighers did not know the total weights or total tons of cane for the season's grinding as there are several weighers, and therefore were not called upon to testify, but others who supervised, and kept account of details, testified.

As relates to all expenses, the evidence was that the books kept included every item. But the repairs were not considered, nor the taxes, as proper elements of charges to be included in the cost of manufacture. The evidence also shows that if the repairs, insurance, and taxes were to be taken into account, and were to be charged, it would amount to from $10,000 to $15,000,

varying from year to year, but not exceeding $15,000.

We may as well state here that, in making up an account of expenses of grinding the cane and manufacturing the product into sugar, insurance and taxes, being an expense on the plantation for the year, should not be taken into account as part of the expense. Nevertheless, we include here a statement of this expense, though not allowed.

On a crop of about 25,000 tons, if $10,000 was the total for insurance, repairs, and taxes, it would be equivalent to 40 cents a ton; if $12,000, it would be equivalent to 50 cents; if $15,000, it would be equivalent to 60 cents a ton.

The district judge did not allow this last item. We are of the opinion that his ruling in this respect was correct. Again it was a fact, as shown by the testimony, that in 1908 plaintiff could find cane to buy in very small quantities, and that after the defendant had sold his plantation, and that plaintiff could not purchase cane to replace that which he bought from defendant.

This testimony goes into details in matter of expenses.

The chemist testifies at some length regarding the items in his department, and he gave in full details in regard to receipt and expenditure in manufacturing the cane into sugar.

The bookkeeper gave an account of all details in his department; he is a permanent employé, or, at any rate, he was in charge of the books during the grinding season to the day he testified. He corroborates the other testimony as to the quantity of tons, the purchases, delivery, and all that relates to the expenses and to revenues, and states in regard to these as testified to by him:

"All facts, above stated, are to my personal knowledge; they being known to me at the time of the occurrence."

He said:

"I speak from my personal knowledge; some of the facts were delivered from reports made to me at the time and verified by me. I now recollect the facts by reference to data made by myself at the time the same occurred. In other words, I had to refer to original data made at the time the facts occurred merely to refresh my memory, and I now know from my own personal knowledge that these facts are correct. Some of these data of which I have spoken came to me through reports, such as cane weights, sugar weights at that time which it was my duty to verify."

He further states:

"My personal knowledge as stated above was derived from the fact that I was present and it was my duty to know these facts."

He thoroughly explains how he arrived at the net profit made on each ton, which he said was $1.20 per ton.

It appears that the company attempted to buy cane in 1908, but was not successful in the attempt. It could only be bought in small quantities. It will be borne in mind that the Interlaken was sold in June, and that after the sale there was little time to buy other cane for the grinding season.

It also appears that the factory ran until December, and that they ground 24,754 tons. That they could have ground all of defendant's cane and more, if they had had the cane.

The evidence is, as relates to price of plaintiff's sugar, that the original account sales made by Godchaux Company showed the sales of the first sugars, known as third sugars, which are taken off or dried the summer following the season of the manufacture; also the molasses. The account sales were introduced in evidence; to their admissibility defendant objected on the ground that it is not the best evidence; that the accounts are signed with the stamp of the selling company unsworn to; that they should have been proven by the commission merchants.

We will not take much time in passing upon this objection; they were introduced to corroborate witnesses.

The witnesses amply proved the amount for which the crop was sold without these commission merchants' account, and they also proved, on the basis of the crop, the plaintiff manufactured into sugar the additional profit they would have made if the defendant had delivered the 4,000 tons due. The lower court fixed this amount at $4,011.80; it is less than was claimed, and less than the amount sworn to. Plaintiff has not asked for an increase on the items allowed and which go towards making up the sum just stated. We therefore leave it as it is. All of this was shown, even without account sales, to which objection was made, but which was admitted.

We dwell upon the expenses of grinding and upon the question of profits made by plaintiff on other cane than defendant's, because by this profit plaintiff gauges the amount to which they contend they are entitled.

After having considered the different points raised to plaintiff's action, and after having made a summary of the facts, we are brought to a consideration of the cause on the merits, and that the contract is null because if it contains a potestative condition, and that plaintiff cannot recover because of a failure to put the defendant in mora.

The facts sustain, in our opinion, the proposition that defendant, as made evident by the contract in question, obligated himself to grow and deliver the cane on his plantation for a fixed period of time, in his name as owner, and deliver it to plaintiff as stipulated, was a breach for which he is liable in damages.

The contract entered into between the parties had all the elements to make it legal. There was a definite price. The parties to it had agreed upon all its terms and conditions. There was a defined thing to be delivered by one and paid by the other.

[3, 4] We are not of the opinion contended for by defendant that, if there is a liability, it imposes a real servitude in the plantation in favor of plaintiff, and that defendant, in consequence, is not liable personally. We will add that the place did not pass to the vendee of defendant burdened with a sort of servitude. The vendee of Interlaken, A. Gonsoulin, was in no way bound to deliver the cane to plaintiff, but it devolved on the defendant to comply with the contract. Plaintiff never had the least right against the vendee; but it remained as a right which could be exercised against the defendant. The sale of Interlaken was an active violation of the contract, and, without placing defendant in default, he could be held bound. There was thereby an active breach. The defendant by his own act could not fulfill the contract. The following decision is pertinent upon the subject: Robinson v. Clark, 20 La. Ann. 384.

Putting in default would be the merest ceremony if there is a total inability to perform. Allen-West & Bush v. Steers, 39 La. Ann. 586, 2 South. 199; Beck v. Fleitas, 37 La. Ann. 492; Ware v. Berlin, 43 La. Ann. 534, 9 South. 490; Dwyer Bros. v. Administrator, 47 La. Ann. 1232, 17 South. 796; McPherson v. Boudreau, 48 La. Ann. 432, 19 South. 550; Telephone & Telegraph Co. v. Railroad Co., 52 La. Ann. 1850, 28 South. 284; Allen, Nugent & Co. v. Buisson, 35 La. Ann. 109; Smith v. Hussey, 119 La. 39, 43 South. 902; Dunbar v. Creditors, 39 La. Ann. 589, 2 South. 543.

The failure to deliver the cane was surely a breach of the contract.

[5] As relates to the potestative condition:

We are of opinion that plaintiff did not limit its obligation at will. The provision was that in case of the loss of its refinery by fire it would be entitled to relief, even to

the extent of terminating the contract. The conditions were to be performed except in case of loss by accident. The accident was the cause that might suspend execution of the contract on plaintiff's part, and not the will of the plaintiff. The obligation, in consequence, did not depend solely on the exercise of the obligor's will. 2035, Civil Code.

A stipulation prompted by prudence may be inserted in a contract for the purpose of protection against loss of a refinery or other improvements without subjecting that contract to the potestative condition of the article cited above. If it becomes a hardship to comply with a condition caused by a loss occasioned by a vis major, it is not the will that is to determine the term of the contract, but it is the accident.

Of the decisions cited by learned counsel for the defendant, we deem it necessary to refer to the last (Murray v. Barnhart, 117 La. 1030, 42 South. 489); if it be not controlling, neither are the preceding decisions cited. In the cited case, the lessee had reserved the right to terminate the lease any time. There was really no adequate consideration, and none of the principles of that decision are directly controlling in the case before us for decision. The difference between the two cases is manifest. The lessee had the right to terminate the contract at any time, thus differing materially from the present case. The plaintiff reserved the right to be exercised only in case of an accident. There never was an accident, and no right therefore arose under the condition in the contract which, according to defendant, contained a potestative condition.

[6] Having arrived at the conclusion that damages are due for the breach of contract, it now becomes necessary to determine the amount which plaintiff should recover.

Shall it be the difference between the cost of the cane and what it would have cost the plaintiff to buy other cane in the endeavor to minimize damages; the profits which the plaintiff would have made if the cane had been delivered according to contract?

As to buying cane in 1908, we meet with the objection of plaintiff that in 1908, particularly, it was too late to make other contracts to buy other cane, and that there was no other cane in the market to be bought. The weight of the testimony sustains that contention, and therefore the judgment cannot be based on the hypothesis that plaintiff should have bought other cane to minimize the loss.

We consider the following article of the Civil Code as controlling, viz.: "The amount of the loss he has sustained and the profit of which he has been deprived." C. C. 1934.

That excludes the idea of fixing damages on the last hypothesis above; that is, that plaintiff should have bought other cane to minimize the losses for which he now sues. His losses, according to the article of the Civil Code, just cited, will but compensate the losses he has sustained and the profits of which he has been deprived.

In addition to our own decisions, the decision in U. S. v. Behan, 110 U. S. 339, 4 Sup. Ct. 81, 28 L. Ed. 168, upon the subject is clear and well expressed.

The court said, substantially, He may recover when the profits are not too remote or speculative. In this instance for decision, the profits are not too remote or speculative. The contract contained provisions that render it possible to fix damages for failure to fulfill. If the refinery of plaintiff had failed to perform its part, it would easily have been possible to fix the amount due defendant as damages. In the same way, and for similar reason, it is possible to fix the amount of damages due plaintiff.

The court below allowed damages for the loss on the crop of 1908, and excluded the claim for subsequent years. We agree that with the evidence before us the amount cannot be allowed.

[7] It is very evident that the amount is due for 1908, but it is not evident that damages were due for 1909. The evidence would not justify a judgment for subsequent years; for that reason we have limited the damages to the year 1908.

This is sustained by the weight of the testimony.

The law and the evidence being in favor of plaintiff and against defendant, the judgment is affirmed at appellant's costs.

MONROE, J., dissents.