STANDARD PLUMBING SUPPLY
CO., et al.

v.

UNITED STATES STEEL
CORPORATION.

Civ. A. No. 79–383–A.

United States District Court,
M. D. Louisiana.

Jan. 14, 1982.

Roy Maughan, Maughan, Atkinson & Martin, Ltd., Baton Rouge, La., for plaintiffs.

Pamela A. Prestridge, Claude F. Reynaud, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

This matter has been tried to the court sitting without a jury and has been submitted for decision upon post trial briefs. The following will constitute the court's findings of fact and conclusions of law as required by Rule 52(a) FRCP.

## FACTS

The parties have stipulated many of the facts and they are hereby recited, along with those which the court finds.

Uniroyal, Inc. operated a chemical plant in the area of Baton Rouge, Louisiana. One of the products it produced was a petroleum based "ABS resin" which is used in the manufacture of plastic products, including plastic pipe. Plaintiff is engaged, among other enterprises, in the manufacture of plastic pipe. There are four chemical plants in the United States which produce ABS resin. In 1973–74 the oil shortage caused a significant reduction in the production of ABS resin.

Standard Plumbing Supply is a plumbing wholesaler-retailer which also produces ABS plastic pipe and steel pipe. During the 1973–74 oil shortage and consequent reduction in the availability of ABS resin, Mr. Dale Reese, the general partner of plaintiff, began attempting to utilize ABS waste resin from the Uniroyal plant and from other plants in the manufacture of ABS plastic pipe. Plaintiff was already, at that time, established as a regular purchaser of virgin ABS resin from Uniroyal. Mr. Reese eventually worked out a process of grinding ABS waste resin from the Uniroyal plant into pellet sized particles and introduction of this waste product into the plastic pipe manufacturing process at plaintiff's Utah facility. Waste resin from other plants proved unsatisfactory for various reasons.

At the time plaintiff began its efforts to utilize the waste product, Uniroyal had no use or market for the product and was

actually paying for its removal and disposal. Even after restoration of adequate petroleum supplies and the resulting availability of virgin ABS resin, plaintiff continued to buy the entire amount of this waste product from Uniroyal. Plaintiff established a recycling plant in Baton Rouge, the primary function of which was to grind the waste into uniform size and to remove impurities for transportation of the product to plaintiff's pipe manufacturing facility in Utah. Plaintiff purchased a nine or ten acre tract of land in Baton Rouge, erected a building and purchased grinders and other equipment required for the operation of the Baton Rouge facility. Plaintiff also, with the consent of Uniroyal, stationed trucks at the chemical plant in order to facilitate removal of the waste resin. Although plaintiff claims to have invested $750,000 in the Baton Rouge facility upon the representation of Uniroyal that the entire supply of the waste product would be sold to plaintiff, no actual evidence of its cost was offered and Mr. Reese freely admits that his agreement with Uniroyal had no specified term and could have been ended by either party at any time.

Plaintiff was not able to utilize the ABS waste product in the manufacture of all of its plastic pipe because of specifications, but plaintiff could and did use all of the waste product produced by Uniroyal. Plaintiff is the largest ABS plastic pipe manufacturer in the United States and it produces non-specification as well as specification plastic pipe. Plaintiff's operations are concentrated in the northwest and west and the availability of the ABS waste supply in the Baton Rouge area enabled it to expand sale of its products into the Gulf coast region. Specifically plaintiff acquired additional trucks for its transportation fleet which hauled finished goods to the Gulf coast area and then hauled ABS waste product from its Baton Rouge facility to its Utah pipe plant.

In late February, 1979, defendant, U. S. Steel Corporation, acquired the Uniroyal plant through a subsidiary, U.S.S. Chemicals, and it assumed liability for all of Uniroyal's obligations to plaintiff. On March 1, 1979, a fire caused extensive damage to plaintiff's Baton Rouge facility and temporarily put it out of operation, although plaintiff continued to purchase waste resin from U. S. Steel and stockpiled it. Plaintiff also began measures to repair and expand the Baton Rouge plant. On March 29, 1979, without prior notice or discussion, U. S. Steel terminated the arrangement with plaintiff and requested that plaintiff's vehicles be removed from the chemical plant within two days.

U. S. Steel's termination of the arrangement with plaintiff effectively cut off plaintiff's source of supply of ABS waste although plaintiff attempted to acquire waste from other plants. Mr. Reese testified that he estimates that, considering the cost of virgin ABS resin, plaintiff saved twenty cents per pound for each pound of ABS waste acquired from Uniroyal. He also testified that when plaintiff lost its source of waste material it suffered a reduction in net profits and it suffered a loss of markets which it had established in the Gulf coast area. Plaintiff also argues that this loss of raw material source rendered its Baton Rouge plant "valueless."

Since the termination of its agreement with plaintiff, U. S. Steel has sold the following amounts of ABS waste product to others:

| | |
|---|---|
| April 19, 1979 through February, 1980 | — 1,406,110 pounds |
| March, 1980 through April, 1981 | — 1,376,116 pounds |

## LAW

This court has jurisdiction because of the diversity of citizenship among the parties and the amount in controversy exceeds $10,000. 28 U.S.C. § 1332.

■ There is no doubt that the arrangement between these parties, although oral and informal, was an agreement or contract. There is also no doubt that no specific term for the arrangement was specified. Because this is a diversity case the law of the forum state applies and both parties agree that no specific term is required under Louisiana law for a valid contract.

Both parties also agree that where no term is specified, Louisiana permits termination of a contract upon reasonable notice. LSA–C.C. art. 1779; *Caston v. Woman's Hospital Foundation, Inc.*, 262 So.2d 62 (La. App. 1st Cir. 1972); *Daily States Pub. Co. v. Uhalt*, 169 La. 893, 126 So. 228 (La.1930).

■ In this case, plaintiff argues that a minimum of three years notice of termination was mandated while defendant suggests that thirty to sixty days was ample notice. Significantly, defendant does not even suggest that its action in giving no notice was reasonable.

The court concludes that the action of U. S. Steel was arbitrary and unreasonable. The termination was accomplished deliberately and intentionally and completely without regard to its effect upon plaintiff's operations. U. S. Steel has offered no explanation for its action and the court can find none.

The evidence establishes that plaintiff erected the Baton Rouge plant for the sole purpose of processing waste from the Uniroyal plant and that over the course of several years, plaintiff had come to rely upon Uniroyal (succeeded by U. S. Steel) as its only source of supply of this waste resin. Although plaintiff did not prove the actual cost of the Baton Rouge facility, the evidence shows that it was a substantial plant erected upon a nine or ten acre tract of land. Since its sole function was to receive the waste product from the Baton Rouge chemical plant, plaintiff should have received sufficient notice of termination to enable it to liquidate the facility in an orderly fashion and to modify its business operations so as to cause the least disruption in its pipe business. Although no evidence was offered on this point, the court concludes that six months would have been a reasonable notice within which plaintiff could have accommodated an orderly termination of its Baton Rouge operation or otherwise accommodated its business to the loss of this raw material source. U. S. Steel by failing to give reasonable notice, breached the contract and it is therefore liable for all damage sustained by plaintiff as a result of its failure to give reasonable notice of termination.

■ In general the measure of damages in Louisiana for breach of contract is the sum that will place the plaintiff in the same position as if the obligation had been fulfilled. LSA–C.C. art. 1930; *Garcia v. Hollywood Pool Corp.*, 328 So.2d 899 (La. App. 4th Cir. 1976); *Weldon v. Crooks*, 24 So.2d 479 (La.App. 2d Cir. 1946); *Meltzer v. Roof Coatings, Inc.*, 536 F.2d 663 (5th Cir. 1976). Whatever damages the defendant might have foreseen as a reasonable man in the light of the facts known to him may be recovered. *Todd Shipyards Corp. v. Turbine Service, Inc.*, 467 F.Supp. 1257 (E.D.La. 1978). Ordinarily damages include the amount of loss sustained and the profit of which one has been deprived, and in a breach of contract where reasonable notice of termination is required, plaintiff should be able to recover that which he would have made or earned during a period equal to the reasonable notice to which he was entitled. LSA–C.C. art. 1934; *Caston v. Woman's Hospital Foundation, Inc.*, 262 So.2d 62 (La. App. 1st Cir. 1972).

Plaintiff claims the following damages:
1) Loss of profits caused by loss of waste products supply and an increase in costs.

Unfortunately, plaintiff declined to offer any evidence in support of this loss except the testimony of Mr. Reese to that effect. Mr. Reese testified that his company suffered a reduction in net profits. However, no actual sales and costs figures were offered in support of that declaration and no actual amounts were testified to by Mr. Reese. While it is clear that plaintiff suffered an increase in the costs of producing the types of plastic pipe in which the waste product was utilized, and it is reasonable to infer that such an increase in costs could result in a reduction in net profits, plaintiff has produced no evidence which could be used to calculate the amount of net profits lost during the six month period following termination of the contract.

2) Loss of Gulf coast markets.

The evidence does establish that plaintiff was able to expand its marketing into the Gulf coast area as a result of its arrangement with Uniroyal and that it lost that market as a result of the termination of that arrangement. Again, however, plaintiff has offered no evidence as to the actual damages sustained by it as a result of the loss of that market. The only evidence offered was a handwritten list of the names of customers in the Gulf coast area with which plaintiff no longer trades. There were no sales figures offered and no net profit figures were offered.

3) Rendering plaintiff's Baton Rouge facility and equipment "valueless."

It is quite clear that termination of the contract did not render plaintiff's Baton Rouge plant "valueless;" that termination clearly did however render the plant useless in plaintiff's business. Although the facility was useless to plaintiff, that certainly does not mean that it is valueless and it is elementary that plaintiff must take all reasonable steps to minimize damages. *New Iberia Sugar Co. v. Lagarde*, 130 La. 387, 58 So. 16 (La.1912); *Bancroft v. Indemnity Ins. Co. of North America*, 203 F.Supp. 49 (W.D.La.1962), affirmed, 309 F.2d 959 (5th Cir. 1963); *Rabon v. Red Ball Motor Freight, Inc.*, 292 So.2d 332 (La.App. 2d Cir. 1974); *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 467 F.Supp. 1257 (E.D.La.1978).

Thus, defendant here is liable only for those damages which plaintiff sustained in disposing of its Baton Rouge plant. Mr. Reese testified that plaintiff sold the land for more than its original purchase price, thus plaintiff suffered no damage on that account. Mr. Reese further testified that the grinders, electric motors and other equipment were also sold but there is no evidence of the original cost of those items and no evidence of the sales price. In addition, plaintiff offered no evidence regarding the original cost of the additional trucks which it added to its transportation fleet nor of the price it received upon the sale of those trucks which it no longer needed when it lost the Gulf coast market area.

While the court is convinced that plaintiff sustained damage as a result of the defendant's breach of the agreement, plaintiff has simply failed to offer evidence from which reasonably accurate damages may be calculated. This is not a situation where the amount of damages cannot be proved with reasonable certainty, as required by Louisiana law. *Culpepper v. Natchitoches Parish School Board*, 333 So.2d 453 (La.App. 3rd Cir. 1976). Standard Plumbing Company is a substantial business entity with seventeen sales outlets in four states, two manufacturing plants, a transportation fleet and its own finance company. As previously noted, it is the largest manufacturer of ABS plastic pipe in the United States. Certainly it maintains the usual business and accounting records which would establish its gross sales of plastic pipe utilizing ABS waste material, its costs of goods sold and its net profits from the sale of such pipe during the years it acquired the waste from Uniroyal. For undisclosed reasons, plaintiff has simply chosen not to produce this evidence.

Plaintiff argues that it ought to recover, as damages, the amount of twenty cents per pound for each pound of waste product sold to others during the period following termination. As referred to earlier, Mr. Reese testified that he estimated that plaintiff "saved" twenty cents per pound for each pound acquired from Uniroyal. Plaintiff argues that the reasonable termination period should be three years and the court has found that six months is a reasonable period. Plaintiff's argument presents an appealing but simplistic approach to damages: Simply multiply the number of pounds sold to others during the period in question times twenty cents and damages are thereby ascertained. This argument fails to consider that article 1934 of the Louisiana Civil Code provides that damages for breach of contract "are the amount of loss he has sustained, and the profit of which he has been deprived." While plaintiff has certainly established that defendant's breach resulted in an increase in the cost of raw material, that does not necessarily equate to an automatic and equal reduc-

tion in net profits and plaintiff has the burden of producing evidence from which net profits may be calculated with reasonable certainty. *Culpepper v. Natchitoches Parish School Board*, 333 So.2d 453 (La.App. 3rd Cir. 1976); *Freeman v. G.T.S. Corp.*, 363 So.2d 1247 (La.App. 4th Cir. 1978); *Casadaban v. Bel Chemical & Supply Co., Inc.*, 322 So.2d 854 (La.App. 1st Cir. 1975); *Peoples Moss Gin Co., Inc. v. Jenkins*, 270 So.2d 285 (La.App. 3rd Cir. 1972).

Here plaintiff has simply failed to produce available evidence from which net profits could be ascertained. The same holds true for the other items of damages claimed by plaintiff.

The sole evidence offered to the court for computation of damages is the testimony of Mr. Reese that plaintiff "saved" twenty cents on each pound of waste material purchased from the chemical plant. Defendant, of course, does not concede the accuracy of this estimate and while the court was impressed with Mr. Reese's sincerity, he conceded that this twenty cent figure was simply an estimate. No actual operating cost figures were produced and, thus, even if this approach to damages were correct, the defendant has been deprived of the opportunity to test the accuracy of the estimate and has further been deprived of the opportunity to test the accuracy of any calculation of net profits. This is the result of plaintiff's decision to decline to produce available evidence and it is not a situation where the damages are incapable of being calculated with the accuracy required by law.

Ordinarily, where the evidence shows that some damage has been incurred but there is no proof of the actual amount of damages, the court may only award nominal damages. *Harding v. Coleman*, 388 So.2d 59 (La.App. 1st Cir. 1980); *Meyer v. Succession of McClellan*, 30 So.2d 788 (La. App.Orl.1947); *Fiesta Foods, Inc. v. Ogden*, 159 So.2d 577 (La.App. 1st Cir. 1963). The court is convinced, however, that plaintiff sustained substantial damages by reason of U. S. Steel's breach of contract. Under Louisiana law, much discretion in the award of damages is left to the fact-finder. In this instance, after a thorough consideration of all of the facts of the case, the court concludes that damages in the amount of $50,000 is appropriate.

For the foregoing reasons there will be judgment in favor of plaintiff and against defendant in the amount of $50,000 together with legal interest thereon from the date of judicial demand until paid.